IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON CONTRERAS,<br><br>  Plaintiff,<br><br>  v.<br><br>JEFF MACOMBER, et al.,<br><br>  Defendants. | No. 2:23-CV-1022-DJC-DMC-P<br><br>ORDER<br><br>and<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's motion for injunctive relief. See ECF No. 8.

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff names as defendants: (1) current California Department of Corrections and Rehabilitation (CDCR) Secretary Jeff Macomber, and (2) former CDCR Secretary, Kathleen Allison. See id. at 6.

///

///

1         In his first claim, Plaintiff asserts that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Plaintiff alleges that Defendants knew and disregarded the substantial risk of serious bodily harm that inmates face when assigned to a Non-Designated Program Facility (NDPF). See id. at 11. Plaintiff provides details regarding his annual review committee hearing on October 14, 2021. The committee informed Plaintiff of its recommendation to transfer Plaintiff to an NDPF, notifying him that if he refused to transfer to an NDPF, disciplinary action would follow. See id. at 11. According to Plaintiff, Defendant Former CDCR Secretary Kathleen Allison enforced the NDPF policy as an "underground regulation" during her entire tenure as CDCR Secretary. Id. at 11.

On November 16, 2021, Plaintiff was transferred to Avenal State Prison (ASP). See id. at 11. Plaintiff recounts the violent events that transpired when he transferred to ASP on June 23, 2022, in which Plaintiff engaged in a physical confrontation with two other inmates. See id. at 12. An officer intervened by administering Oleoresin Capsicum (OC) pepper spray twice to Plaintiff. Plaintiff then provides a detailed account of the officer escorting Plaintiff to a decontamination shower, in which he was stripped of his clothes and back brace. See id. at 14-15. Plaintiff alleges that the Defendants are aware that the NDPF policy created a dangerous atmosphere that invites the use of excessive force by correctional officers in violation of the Eighth Amendment. See id. at 18.

In his second claim, Plaintiff alleges that Defendant Allison owed Plaintiff a duty of reasonable care to not put Plaintiff's personal safety in jeopardy and protect him from assaults by other inmates. See id. at 19. According to Plaintiff, Defendant Allison was aware that General Population (GP) inmates that program on a NDPF and are later transferred back to a GP yard would face attempts on their lives. See id. at 16. Based on briefings, reports, and statistical data about the security, safety, and health of the inmate population, Defendant Allison and Defendant Macomber were aware of the dangers of upholding a NDPF policy. See id. at 16.

///

///

Plaintiff asserts that Defendant Jeff Macomber owed a duty of reasonable care not to place his personal safety in jeopardy and to protect him from assaults by other inmates. See id. at 19. Plaintiff claims that Defendant Allison violate that duty by enforcing underground regulation that she knew presented a substantial risk of harm to the plaintiff by other inmates. See id. at 17. Plaintiff claims that Defendant Macomber is currently breaching that duty by continuing to enforce the NDPF policy. See id. at 19. Plaintiff alleges that breaches of duty proximately caused Plaintiff being transferred to a NDPF where he suffered physical injuries and loss of his medical back brace. See id. at 19.

Lastly, Plaintiff claims that Defendant Allison failed to commence her ministerial duties. See id. at 12. Defendant Allison did not commence her ministerial duty of compliance with the Administrative Procedures Act (APA) in order to make the NDPF policy an official regulation until December 3, 2021, and the policy did not become an official regulation until November 14, 2022. See id. at 12. Plaintiff asserts that if Defendant Allison had waited until the NDPF policy was codified to transfer GP inmates to NDPFs, Plaintiff would not have endured the pain and suffering and loss of his back brace. See id. at 12. Plaintiff alleges that Defendant Former Secretary Kathleen Allison owed Plaintiff a duty to comply with the State's Administrative Procedures Act in order to codify the NDPF policy before forcing inmates to transfer to NDPFs. See id. at 12. Plaintiff asserts that the duty was breached when Defendant Allison enforced the NDPFs policy as an underground regulation, in violation state laws. See id. at 20. Plaintiff claims that this breach of duty was the cause of Plaintiff's pain and suffering and loss of medical property. See id. at 20.

**B.     Procedural History**

This action was originally filed in the Sacramento County Superior Court and removed to this Court on May 30, 2023. See ECF No. 1. Defendant Macomber had been served in state court. See id. On January 10, 2024, the Court determined the action was also appropriate for service on Defendant Allison. See ECF No. 10. Both defendants filed their answer on March 11, 2024. See ECF No. 18. On March 18, 2024, the Court issued an order staying proceedings for 120 days and referring the case to the Court's Early Alternative Dispute Resolution program

for prisoner civil rights cases.  See ECF No. 19.  A settlement conference has been set before Hon. Jeremy D. Peterson on October 1, 2024.  See ECF No. 20.  The stay of proceedings has been extended through this date.  See ECF No. 21.

## II.  DISCUSSION

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established.  To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction.  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365 (2008)).  To the extent prior Ninth Circuit cases suggest a lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no longer controlling, or even viable."  Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).  Under Winter, the proper test requires a party to demonstrate: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public interest.  See Stormans, 586 F.3d at 1127 (citing Winter, 129 S.Ct. at 374).  The court cannot, however, issue an order against individuals who are not parties to the action.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).  Moreover, if an inmate is seeking injunctive relief with respect to conditions of confinement, the prisoner's transfer to another prison renders the request for injunctive relief moot, unless there is some evidence of an expectation of being transferred back.  See Prieser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam).

In his motion, Plaintiff seeks an order enjoining prison officials from transferring GP inmates to NDPFs.  See ECF No. 8, pg. 1.  According to Plaintiff, he attended his "annual review hearing" on October 11, 2023, and was placed on the transfer list as someone eligible for transfer to a NDPF.  See id.  Plaintiff states that he has previously been transferred to an NDPF and, at that facility, he "received punches to the back of his head, an excessive amount of Oleoresin Capsicum (OC) pepper spray, and a loss of his medical appliance (back brace)."  Id. at

1-2. Plaintiff adds that the "anguish of knowing he can go through that experience again is detrimental to a person's mental health." Id. at 2. Finally, Plaintiff states that, if he is transferred to an NDPF, he can be transferred back to a GP yard where he would still "be a target for assaults and attempts on his life." Id.

At the time Plaintiff filed his motion for injunctive relief, Plaintiff was housed at Pleasant Valley State Prison (PVSP), which is not an NDPF.[1] A review of the docket reflects that Plaintiff filed a notice of change of address on January 22, 2024, indicating that he had been transferred to California State Prison – Solano (CSP-Solano), which is also not an NDPF, where he is currently incarcerated.[2] See ECF No. 16. Given that neither PVSP nor CSP-Solano are NDPFs, Plaintiff's fears of harm from either being transferred from a GP yard to an NDPF or being transferred from an NDPF back to a GP yard, cannot at present materialize. Thus, the Court finds that any harm Plaintiff may suffer is speculative at best. Further, even if CSP-Solano was an NDPF or if Plaintiff is later transferred to an NDPF, Plaintiff's fears of irreparable harm remain speculative as they rest on what other inmates or prison staff may or may not do in the future, and not on real dangers known to actually exist. Additionally, as to the likelihood of success on the merits, the Court finds that, while Plaintiff's complaint states cognizable claims, Plaintiff has not presented evidence indicating that he is likely to succeed on those claims.

///

---

[1] CDCR public records indicate that PVSP is not an NDPF facility. See cdcr.ca.gov/facility-locator/pvsp.

[2] CDCR public records indicate that CSP-Solano is also not an NDPF facility. See cdcr.ca.gov/facility-locator/sol. The "Details & History" section of the public website states:

> CSP-Solano focuses on providing a comprehensive work/training program with academic education, vocational training, and industries assignments geared towards providing inmates with work skills and education. Additionally, the institution has a variety of self-help programs including Al-anon, Alcoholics Anonymous (AA), Alternatives to Violence Project (AVP), In-Building Self-Help Programs (IBSHPs), Narcotics Anonymous (NA), The Urban Ministry Institute (TUMI), The Victims Voice, Veterans Assistance, and the Youth Diversion Prisoners' Outreach Program (POP). Through the educational and vocational training, industries assignments, and self-help programs, the institution provides inmates the opportunity to develop the life skills necessary for successful re-integration into society. The institution is comprised of four separate, semi-autonomous facilities, a 125 bed Administrative Segregation Unit, and a 16 bed Correctional Treatment Center.

Id.

Finally, injunctive relief with respect to prison conditions must be "narrowly drawn, extent no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2); see also Wonnacott v. Heehn, 2021 WL 970453 (D. Oregon 2021).  Here, even if the Court were to find that injunctive relief in some form is warranted, the relief requested by Plaintiff is neither narrowly drawn nor the least intrusive means given that Plaintiff seeks an injunction barring all GP inmates from being transferred to or from an NDPF.

### III.  CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1. It is RECOMMENDED that Plaintiff's motion for injunctive relief, ECF No. 8, be DENIED.

2. It is ORDERED that the stay of proceedings imposed on March 18, 2024, and extended through the date of a settlement conference set in this matter on October 1, 2024, remains in effect except as to filing of objections to the above findings and recommendations and any response thereto.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 6, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE